# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LAUREN DATTILO-BARKER, | : CIVIL ACTION NO.: |
| *Plaintiff*, | : |
| vs. | : |
| DARTMOUTH PHARMACEUTICALS, INC., | : **JURY TRIAL DEMANDED** |
| *Defendant*. | : |

## COMPLAINT AND JURY DEMAND

### I. PRELIMINARY STATEMENT:

1. This is an action for an award of damages, declaratory and injunctive relief, attorney's fees and other relief on behalf of Plaintiff, Lauren Dattilo-Barker ("Plaintiff Dattilo-Barker"), a former employee of Defendant, Dartmouth Pharmaceuticals, Inc. ("Defendant"), who has been harmed by the Defendant's discriminatory employment practices.

2. This action is brought under Title VII of the Human Rights Act of 1964, 42 U.S.C. §2000(e), et seq., as amended by the Civil Rights Act of 1991 ("Title VII"), the Pennsylvania Human Relations Act, 43 P.S. §951 et seq. ("PHRA"), and Massachusetts General Laws ch. 151B §§4(1), (4), (16A).

### II. JURISDICTION AND VENUE:

3. The jurisdiction of this Court is invoked, and venue is proper in this district,

pursuant to 28 U.S.C. §§1331 and 1391 as Plaintiff Dattilo-Barker's claims are substantively based on Title VII.

4. The supplemental jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1367, to consider Plaintiff Dattilo-Barker's claims arising under the PHRA and the Massachusetts General Laws ch. 151B §§4(1), (4), (16A).

5. All conditions precedent to the institution of this suit have been fulfilled. On March, 29 2012, a Notice of Right to Sue was issued by the United States Equal Employment Opportunity Commission ("EEOC") and this action has been filed within ninety (90) days of receipt of said notice.

6. Plaintiff Dattilo-Barker has satisfied all other jurisdictional prerequisites to the maintenance of this action.

### III. PARTIES:

7. Plaintiff, Lauren Dattilo-Barker ("Plaintiff Dattilo-Barker"), is a thirty-two (32) year old female individual and citizen of the Commonwealth of Pennsylvania, residing therein at 105 S. Timber Road Holland, PA 18966.

8. Defendant, Dartmouth Pharmaceuticals, Inc. ("Defendant"), is a corporation duly organized and existing under the laws of the Commonwealth of Massachusetts, maintaining a place of business located at 38 Church Ave. Wareham, MA 02571.

9. At all times relevant hereto, the Defendant was acting through its agents, servants, and employees, who were acting within the scope of their authority, course of employment, and under the direct control of the Defendant.

10. At all times material herein, the Defendant has been a "person" and

"employer" as defined under Title VII, Massachusetts General Laws ch. 151B §§4(1), (4), (16A), and the PHRA, and has been, and is, subject to the provisions of each said Act.

11. Upon information and belief, at all times material hereto, the Defendant employed fifteen (15) or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year.

12. At all times relevant hereto, Plaintiff Dattilo-Barker was an "employee" within the meaning of Title VII of the Civil Rights Act of 1964 and 1991 as amended. the Pennsylvania Human Relations Act ("PHRA"), and the Massachusetts General Laws ch. 151B §§4(1), (4), (16A).

## IV. STATEMENT OF FACTS:

13. Plaintiff Dattilo-Barker, a thirty-two (32) year old female, was employed by the Defendant from on or about April 25, 2011 until on or about June 19, 2011, the date of her unlawful termination.

14. During the course of her employment with the Defendant, Plaintiff Dattilo-Barker held the position of Pharmaceutical Sales Representative and at all times maintained a satisfactory job performance rating in said capacity.

15. On or about April 25, 2011, Michael Greco ("Greco"), President, a male approximately age fifties (50's), commenced a week-long training program with Plaintiff Dattilo-Barker.

16. Upon commencement of the training program, the Defendant, through its agents, servants, and employees, including, but not limited to, Greco, began

subjecting Plaintiff Dattilo-Barker to a hostile work environment through various instances of sexual harassment.

17. On or about April 25, 2011, Plaintiff Dattilo-Barker's superior, Greco, commenced making unwelcome, inappropriate, sexually charged comments to Plaintiff Dattilo-Barker.

18. By way of example, Greco repeatedly discussed the movie *Love and Other Drugs*, referencing pharmaceutical representatives who engaged in sexually inappropriate behavior with clients and co-workers. Said references were an effort to encourage the Plaintiff Dattilo-Barker to engage in such behavior.

19. Moreover, Greco expounded at length to Plaintiff Dattilo-Barker about female pharmaceutical representatives at another company who perform oral sex on their managers. Said sexually offensive and degrading comments were repeated by Greco throughout the week-long training, to the point of causing Plaintiff Dattilo-Barker to suffer severe discomfort, embarrassment, and emotional distress.

20. By way of further example, Greco inappropriately discussed his personal experience with impotence with Plaintiff Dattilo-Barker, again causing her to suffer severe discomfort, embarrassment, and emotional distress.

21. Greco also subjected Plaintiff Dattilo-Barker to disparaging comments on the basis of her sex, creating a hostile work environment. By way of example, Greco told Plaintiff Dattilo-Barker she was a "dumb blonde until proven otherwise."

22.   Furthermore, Greco made several inappropriate sexual gestures toward Plaintiff Dattilo-Barker, including but not limited to constantly staring at Plaintiff Dattilo-Barker's breasts when she would speak, while continuously licking his lips in a lascivious manner.  Said actions caused Plaintiff Dattilo-Barker to suffer severe discomfort, embarrassment, and emotional distress.

23.   In addition, Greco videotaped Plaintiff Dattilo-Barker and her colleagues presenting a mock sales pitch.  However, instead of focusing on their face, Greco panned the camera up and down the body of Kristen Lippmann ("Lippman"), Pharmaceutical Sales Representative, in a lewd fashion.  Curiously, Plaintiff Dattilo-Barker was never permitted to view said video in order to critique and learn from her mock sales pitch.

24.   As a result thereof, on or about April 26, 2011, Plaintiff Dattilo-Barker disclosed Greco's sexually harassing behavior to her co-worker, Sarah Buttrick ("Buttrick"), Pharmaceutical Sales Representative.  In response thereto, Buttrick registered a complaint of sexual harassment on behalf of Plaintiff Dattilo-Barker to Plaintiff Dattilo-Barker's supervisor, Ted Brown ("Brown"), District Manager.

25.   On or about April 27, 2011, rather than conduct an investigation into Plaintiff Dattilo-Barker's allegations, the Defendant failed to take any action to cause the aforesaid sexual harassment to cease.  Rather, Greco summoned Plaintiff Dattilo-Barker into an office, shut the door, and told Plaintiff Dattilo-Barker that what he said "was not sexual harassment," that he "did not sexually harass [Plaintiff Dattilo-Barker]," and told

Plaintiff Dattilo-Barker to "grow up." Said confrontation caused Plaintiff Dattilo-Barker to feel extremely frightened and helpless, thereby exacerbating the hostile work environment.

26. Thereafter, the Defendant, through its agents, servants, and employees, including, but not limited to, Greco, embarked upon a campaign of retaliation against Plaintiff Dattilo-Barker for opposing unlawful sexual harassment in the workplace, thereby fueling the hostile work environment.

27. By way of illustration, immediately subsequent to Plaintiff Dattilo-Barker registering her complaint of sexual harassment, Greco increased the frequency and severity of the sexual harassment to which he subjected Plaintiff Dattilo-Barker.

28. For example, Greco commented that Plaintiff Dattilo-Barker could practically see him in his underwear because he was profusely sweating and that he would "love to jump into a pool naked right now."

29. Additionally, Greco questioned Plaintiff Dattilo-Barker as to whether she would be bothered if her husband engaged in sexual acts with a homosexual man.

30. Thereafter, Plaintiff Dattilo-Barker commenced her position as Territory Manager for the Defendant's Eastern Pennsylvania territory, and carried out the vast majority of her job duties in the state of Pennsylvania.

31. On or about June 10, 2011, Greco called Plaintiff Dattilo-Barker while she was walking to a client meeting. Upon Plaintiff Dattilo-Barker informing Greco that she was walking to a meeting, he asked her if she was "a street walker, a hooker?" Said

egregious comment caused the Complainant severe discomfort, embarrassment, and emotional distress.

32. On or about June 14, 2011, Plaintiff Dattilo-Barker's supervisor, Brown, contacted Plaintiff Dattilo-Barker and informed her that he was resigning from his position of employment with the Defendant.

33. In connection thereto, on or about June 17, 2011, Greco informed Plaintiff Dattilo-Barker that he would be assuming Brown's responsibilities and would be accompanying Plaintiff Dattilo-Barker in her car for the day, on or about June 22, 2011, in order to observe her job performance.

34. On or about June 18, 2011, Plaintiff Dattilo-Barker registered another compliant of sexual harassment with Buttrick and further expressed her extreme discomfort and fear at the prospect of spending an entire day unsupervised with Greco.

35. In retaliation for registering the aforesaid complaints of sexual harassment, on or about June 19, 2011, the Defendant abruptly terminated Plaintiff Dattilo-Barker's employment for alleged poor job performance. Curiously, Plaintiff Dattilo-Barker had received two (2) emails from Greco the previous week congratulating her on recent sales.

36. Moreover, the retaliatory termination of Plaintiff Dattilo-Barker's employment was in violation of her employment contract with the Defendant which required seven (7) days notice prior to the termination of employment.

37. As further retaliation, subsequent to Plaintiff Dattilo-Barker's termination,

Greco contacted Plaintiff Dattilo-Barker and demanded that she ship over fifty (50) boxes of sample merchandise back to the Defendant's offices at her own expense. The Defendant advised Plaintiff Dattilo-Barker that she could utilize its shipping account to pay for the shipping charges but subsequently failed and refused to provide its account number to Plaintiff Dattilo-Barker.

38. In response, Plaintiff Dattilo-Barker contacted Greco and informed him that the aforementioned merchandise was available to be picked up at her home or alternatively that she would ship the merchandise to the Defendant provided the Defendant pay for the shipping charges

39. As further retaliation, the Defendant illegally seized one thousand five hundred eight dollars and thirty three cents ($1,508.33) from Plaintiff Dattilo-Barker's personal bank account.

40. Plaintiff Dattilo-Barker believes and therefore avers that her supervisor, Greco, aided and abetted Defendant in subjecting her to unlawful sexual harassment through his deliberate and affirmative harassing acts.

41. Plaintiff Dattilo-Barker further believes and therefore avers that no legitimate business reason existed for the termination of her employment and that her termination was actually in retaliation for opposing unlawful sexual harassment in the workplace.

## COUNT I
### (Title VII- Sexual Harassment and Hostile Work Environment)
### Plaintiff Dattilo-Barker v. Defendant

42. Plaintiff Dattilo-Barker incorporates paragraphs 1 through 41 of her Complaint as though fully set forth herein.

43. The actions of the Defendant, through its agents, servants and employees, in subjecting Plaintiff Dattilo-Barker to a hostile work environment, sexual harassment, and sex discrimination, constituted a violation of Title VII.

44. As a direct result of the aforesaid unlawful discriminatory employment practices engaged in by the Defendant in violation of Title VII, Plaintiff Dattilo-Barker has sustained permanent and irreparable harm resulting in the loss of her employment, which caused her to sustain a loss of earnings, plus the value of certain benefits, plus loss of future earning power, plus back pay, front pay, and interest due thereon.

45. As further direct result of the aforesaid unlawful discriminatory employment practices engaged in by the Defendant in violation of Title VII, Plaintiff Dattilo-Barker suffered severe emotional distress, embarrassment, humiliation, and loss of self-esteem.

## COUNT II
### (Title VII - Retaliation)
### Plaintiff Dattilo-Barker v. the Defendant

46. Plaintiff Dattilo-Barker incorporates by reference paragraphs 1 through 45 of her Complaint as though fully set forth at length herein.

47. The actions of the Defendant, through its agents, servants and employees, in retaliating against Plaintiff Dattilo-Barker for her registering a complaint of unlawful sexual

harassment in the workplace, constituted a violation of Title VII.

48. As a direct result of the aforesaid unlawful retaliatory employment practices engaged in by the Defendant in violation of Title VII, Plaintiff Dattilo-Barker has sustained permanent and irreparable harm resulting in the loss of her employment, which caused her to sustain a loss of earnings, plus the value of certain benefits, plus loss of future earning power, plus back pay, front pay, and interest due thereon.

49. As further direct result of the aforesaid unlawful retaliatory employment practices engaged in by the Defendant in violation of Title VII, Plaintiff Dattilo-Barker suffered severe emotional distress, embarrassment, humiliation, and loss of self-esteem.

## COUNT III
### (PHRA - Sexual Harassment and Hostile Work Environment)
### Plaintiff Dattilo-Barker v. the Defendant

50. Plaintiff Dattilo-Barker incorporates by reference paragraphs 1 through 49 of her Complaint as though fully set forth at length herein.

51. The actions of the Defendant, through its agents, servants and employees, in subjecting Plaintiff Dattilo-Barker to a hostile work environment, sexual harassment, and sex discrimination constituted a violation of the PHRA.

52. As a direct result of the aforesaid unlawful discriminatory employment practices engaged in by the Defendant in violation of the PHRA, Plaintiff Dattilo-Barker sustained permanent and irreparable harm, resulting in the loss of her employment, which caused her to sustain a loss of earnings, plus the value of certain benefits, plus loss of future earning power, plus back pay, and front pay and interest due thereon.

53. As a further direct result of the aforesaid unlawful discriminatory employment practices engaged in by the Defendant in violation of the PHRA, Plaintiff Dattilo-Barker suffered severe emotional distress, embarrassment, humiliation, and loss of self-esteem.

### COUNT IV
### (PHRA - Retaliation)
### Plaintiff Dattilo-Barker v. the Defendant

54. Plaintiff Dattilo-Barker incorporates by reference paragraphs 1 through 53 of her Complaint as though fully set forth at length herein.

55. The actions of the Defendant, through its agents, servants and employees, in retaliating against Plaintiff Dattilo-Barker for her registering a complaint of sexual harassment in the workplace, constituted a violation of PHRA.

56. As a direct result of the aforesaid unlawful retaliatory employment practices engaged in by the Defendant in violation of PHRA, Plaintiff Dattilo-Barker has sustained permanent and irreparable harm resulting in the loss of her employment, which caused her to sustain a loss of earnings, plus the value of certain benefits, plus loss of future earning power, plus back pay, front pay, and interest due thereon.

57. As further direct result of the aforesaid unlawful retaliatory employment practices engaged in by the Defendant in violation of PHRA, Plaintiff Dattilo-Barker suffered severe emotional distress, embarrassment, humiliation, and loss of self-esteem.

### COUNT V
### (M.G.L. ch. 151B - Sexual Harassment and Hostile Work Environment)
### Plaintiff Dattilo-Barker v. the Defendant

58. Plaintiff Dattilo-Barker incorporates by reference paragraphs 1 through 57 of her Complaint as though fully set forth at length herein.

59. The actions of the Defendant, through its agents, servants and employees, in subjecting Plaintiff Dattilo-Barker to a hostile work environment, sexual harassment, and sex discrimination constituted a violation of M.G.L. ch. 151B.

60. As a direct result of the aforesaid unlawful discriminatory employment practices engaged in by the Defendant in violation of M.G.L. ch. 151B, Plaintiff Dattilo-Barker has sustained permanent and irreparable harm, resulting in the loss of her employment, which caused her to sustain a loss of earnings, plus the value of certain benefits, plus loss of future earning power, plus back pay, and front pay and interest due thereon.

61. As a further direct result of the aforesaid unlawful discriminatory employment practices engaged in by the Defendant in violation of M.G.L. ch. 151B, Plaintiff Dattilo-Barker suffered severe emotional distress, embarrassment, humiliation, and loss of self-esteem.

### COUNT VI
### (M.G.L. ch. 151B - Retaliation)
### Plaintiff Dattilo-Barker v. the Defendant

62. Plaintiff Dattilo-Barker incorporates by reference paragraphs 1 through 61 of her Complaint as though fully set forth at length herein.

63. The actions of the Defendant, through its agents, servants and employees, in retaliating against Plaintiff Dattilo-Barker for her registering a complaint of sexual harassment

in the workplace, constituted a violation of M.G.L. ch. 151B.

64. As a direct result of the aforesaid unlawful retaliatory employment practices engaged in by the Defendant in violation of M.G.L. ch. 151B, Plaintiff Dattilo-Barker has sustained permanent and irreparable harm resulting in the loss of her employment, which caused her to sustain a loss of earnings, plus the value of certain benefits, plus loss of future earning power, plus back pay, front pay, and interest due thereon.

65. As further direct result of the aforesaid unlawful retaliatory employment practices engaged in by the Defendant in violation of M.G.L. ch. 151B, Plaintiff Dattilo-Barker suffered severe emotional distress, embarrassment, humiliation, and loss of self-esteem.

## PRAYER FOR RELIEF

66. Plaintiff Dattilo-Barker incorporates by reference paragraphs 1 through 65 of her Complaint as though fully set forth at length herein.

**WHEREFORE**, Plaintiff Dattilo-Barker requests that this Court enter judgment in her favor and against the Defendant, and Order that:

a. Defendant compensate Plaintiff Dattilo-Barker with a rate of pay and other benefits and emoluments of employment to which she would have been entitled had she not been subjected to unlawful discrimination;

b. Defendant compensate Plaintiff Dattilo-Barker with an award of front pay, if appropriate;

c. Defendant pay to Plaintiff Dattilo-Barker punitive damages, compensatory damages for future pecuniary losses, pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses as allowable;

d. Defendant pay to Plaintiff Dattilo-Barker pre and post judgment interest, costs of suit and attorney and expert witness fees as allowed by law;

e. The Court award such other relief as is deemed just and proper.

## JURY DEMAND

Plaintiff Dattilo-Barker demands trial by jury.

**SIDNEY L. GOLD & ASSOCIATES, P.C.**

By: /s/Sidney L. Gold, Esquire
SIDNEY L. GOLD, ESQUIRE
I.D. NO.: 21374
1835 Market Street, Suite 515
Philadelphia, PA 19103
(215) 569-1999
**Attorney for Plaintiff, Lauren Dattilo-Barker**

DATED: June 22, 2012

## VERIFICATION

I hereby verify that the statements contained in this **Complaint** are true and correct to the best of my knowledge, information and belief. I understand that false statements herein are made subject to the penalties of Title 18 Pa. C.S.A. §4904, relating to unsworn falsification to authorities.

DATE: 6/19/12

_____
LAUREN DATTILO-BARKER, Plaintiff